UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ALRELIO EVANS,

              Plaintiff,

v.

                                        Case No. 1:24-cv-913

HEIDI WASHINGTON, et al.,

                                        Hon. Hala Y. Jarbou

              Defendants.
_____/

## OPINION

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Sixteen state prisoners initiated this action by filing one complaint on September 6, 2024, and paying the full $405.00 filing fee. In an order (ECF No. 3) entered on September 13, 2024, the Court severed Plaintiffs' claims into 16 related cases and directed each Plaintiff to file an amended complaint in his own case. The above-captioned action is the result of this severance. The Court received Plaintiff's amended complaint (ECF No. 8) on October 1, 2024. Plaintiff has also filed an objection (ECF No. 7) to the Court's September 13, 2024, order.

      Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* amended complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's amended complaint for failure to state a claim against Defendants Bush, Heydens, Unknown Parties (referred to as ICF staff), Atearn, Macauley, Hadden, Addis, Houghton, Unknown Party #1, and Unknown Party #2. The Court will also dismiss, for failure to state a claim, the following claims against Defendants Washington, Davids, Bonn, Brokaw, Dunigan, Luther, Simon, Smith, Saad, Shafer, Norton, Bookie, and Maranka: (1) Plaintiff's First Amendment retaliation claims; (2) Plaintiff's Eighth Amendment claim against Defendant Washington; (3) Plaintiff's Fourteenth Amendment due process and equal protection claims; (4) Plaintiff's ADA claims against Defendants Davids, Bonn, Brokaw, Dunigan, Luther, Simon, Smith, Saad, Shafer, Norton, Bookie, and Maranka; (5) Plaintiff's PAIMI Act claims; and (6) Plaintiff's RICO Act/embezzlement claims. The following claims remain in the case: (1) Plaintiff's Eighth Amendment claims against Defendants Davids, Bonn, Brokaw, Dunigan, Luther, Simon, Smith, Saad, Shafer, Norton, Bookie, and Maranka; and (2) Plaintiff's ADA claim against Defendant Washington.

The Court will also deny Plaintiff's objection (ECF No. 7) to the Court's September 13, 2024, order.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which Plaintiff complains occurred there, as well as at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. Plaintiff sues the following MDOC administrative personnel: Director Heidi Washington, Deputy Director Jeremy Bush, and Mental Health Rights Specialist

Sara Heydens. Plaintiff also sues the following ICF personnel: Warden John Davids; Deputy Warden Unknown Bonn; Assistant Deputy Wardens R. Brokaw and J. Dunigan; Residential Unit Manager Unknown Luther; Prison Counselors Walton L. Smith and Unknown Simon; Psychiatrists Unknown Saad and Unknown Schafer; Psychologists Michelle Norton and Unknown Bookie; and Unit Chief David Maranka. Plaintiff also sues the following IBC personnel: Warden Matthew Macauley; Deputy Warden Unknown Party #1; Assistant Deputy Warden B. Hadden; Unit Chief J. Atearn; Residential Unit Manager B. Addis; Prison Counselor Adam Houghton; and Unknown Party #2, referred to as an employee at ICF. Plaintiff indicates that he is suing Defendants Washington and Davids in their official and personal capacities, and that he is suing all other named Defendants in their personal capacities only.

Plaintiff's amended complaint concerns conditions that he experienced while incarcerated in the Start Now Unit.[1] Plaintiff states that on July 12, 2022, Defendants Atearn, Macauley, Brokaw, Hadden, Addis, and Houghton held a Security Classification Committee (SCC) meeting at IBC, without Plaintiff being present, and chose to refer Plaintiff to ICF's Start Now program. (Am. Compl., ECF No. 8, PageID.120.) Plaintiff states that he had been placed in segregation on June 30, 2022, for allegedly assaulting non-party Officer Tinerella. (*Id.*) Plaintiff claims that allegation was not true. (*Id.*) Plaintiff was sentenced to 10 days' detention. (*Id.*) According to

---

[1] The mission statement for the MDOC Start Units reads as follows: "To provide a secure general population alternative to administrative segregation while providing programming and other structured and unstructured out of cell activities based upon the prisoner's positive adjustment, with the goal of reintegration into traditional general population." *See, e.g.*, *Randall v. Washington*, No. 1:24-cv-344, 2024 WL 3158258, at *2 (W.D. Mich. June 25, 2024); *Miller v. Davids*, No. 1:20-cv-108, 2022 WL 329844, at *9 (W.D. Mich. Jan. 6, 2022).

Plaintiff, "no ad[ministrative] seg]regation] was recommended and Plaintiff [should have] been released from segregation." (*Id.*)

Plaintiff arrived at ICF's Start Now unit on September 23, 2022. (*Id.*) He claims that he was "sent to a higher security level" and "spent over 7 days (over 2 years now) in temporary segregation due to lack of bed space in the Start Unit." (*Id.*) Plaintiff sent notice to Defendants Washington, Bush, Heydens, Davids, Bonn, Brokaw, Dunigan, Luther, Smith, Simon, Saad, Schafer, Norton, Bookie, and Maranka that he was in temporary segregation for more than 7 days and that he is mentally ill. (*Id.*) Plaintiff explained that he had been diagnosed with several mental health disorders and that he had "experienced increased depression, anxiety, delusions, post-traumatic slave syndrome, post-traumatic stress disorder, psychosis, claustrophobia, suicidal ideation, paranoia[,] and schizoaffective disorder due to prolonged solitary confinement." (*Id.*)

Plaintiff alleges that Defendant Unknown Party #2 refused to allow Plaintiff to order a Secure Pak while in the Start Now Unit. (*Id.*, PageID.119.) Plaintiff indicates that on October 31, 2022, his mother told him during a phone call that "there was a block placed at ICF to prevent Plaintiff form ordering Secure Paks." (*Id.*) Plaintiff contends that the Start Now manual allows inmates to order Secure Paks after they complete Phase 1 of the program, which Plaintiff states that he has. (*Id.*) Plaintiff alleges that the Secure Pak "consist[s] of the same items as the prison store, but are allowed every 3 months." (*Id.*) He contends that he "had no other means to obtain [hygiene], medication, shower shoes[,] or dietary supplements." (*Id.*) Plaintiff states that "similarly situated prisoners were allowed to order [general population] store items every 2 weeks and Secure Paks every 3 months." (*Id.*)

Plaintiff goes on to state that he suffered from weight loss and delirium due to engaging in hunger strikes. (*Id.*, PageID.121.) Plaintiff engaged in hunger strikes to protest "being denied mental health treatment," as well as the fact that he had been sent to the Start Now unit. (*Id.*) According to Plaintiff, mental health staff and the SCC refuse to hold a treatment team meeting "and refer Plaintiff to RTP and/or release him" to general population. (*Id.*) Plaintiff avers that "24 hour lockdown in the Start Program (SHU) ha[s] been detrimental to his mental health." (*Id.*) He also contends that "this treatment has been in retaliation for grievances, past litigation[,] and involvement with the National Appellate Clinic." (*Id.*)

Plaintiff contends that the Start Now program "is none other than the outlawed SHU program from California and Indiana that has been slightly modified for Michigan." (*Id.*) He avers that it is falsely advertised as a mental health program "so that Defendants can accumulate additional public funds and funds from philanthropist organizations." (*Id.*)

Plaintiff goes on to state that he has been prescribed Zoloft and Abilify "for the purpose of subsiding hearing voices, seeing faces, depression, sleep[,] etc. which persuade acts of physical engagement." (*Id.*) He has a history "of being in and out of mental health programs, institutions[,] and hospitals." (*Id.*) Plaintiff contends, however, that there are "no privileges or programs provided in the Start unit that Plaintiff[] could not receive in general population." (*Id.*, PageID.122.) According to Plaintiff, the Start Now unit is nothing more than an alternative to administrative segregation. (*Id.*)

Plaintiff contends that the Start Now program is unconstitutional because it "denies religious services, clean environment, law library access, . . . exaggerate[s] programming[,] and create[s] mental illnesses." (*Id.*) Plaintiff claims that inmates in the program are "treated

6

sadistically and maliciously under the belief [they] are too mentally ill to navigate through the courts." (*Id.*) Plaintiff "is not allowed to clean his cell properly and sometimes not at all." (*Id.*, PageID.123.) He contends that he must be escorted to the shower and yard cages in handcuffs, and "is fed in his filthy cell." (*Id.*) Plaintiff is not allowed to go to the gym for exercise. (*Id.*) He "is required to attend SCC reviews monthly like all other [administrative segregation] prisoners." (*Id.*) He suggests that the Start Now program "is merely a front to hold Plaintiff in segregation indefinitely." (*Id.*)

Plaintiff goes on to allege that the groups in the Start Now unit do not equate to mental health treatment. (*Id.*, PageID.126.) He avers that he needs Dialectical Behavior Therapy (DBT), as well as Cognitive Behavioral Therapy (CBT). (*Id.*) Plaintiff alleges that "[t]reatment plans are not adjusted or revised to address ongoing and worsening symptoms." (*Id.*) He claims that he is "still being held in the program after receiving a Certificate of Completion." (*Id.*)

According to Plaintiff, "[t]he 30-day reviews are ineffectual because of insufficient mental health staff and because of the circumstances on the unit." (*Id.*) Specifically, Plaintiff alleges that there is a lack of privacy where prisoners can communicate candidly with medical staff. (*Id.*) Plaintiff goes on to state that there have been times where he has not been taken out of his cell for "out-of-cell evaluation" because of scheduling difficulties and a lack of correctional staff. (*Id.*, PageID.127.)

Plaintiff avers that he suffers from decompensation and has often had difficulty conforming to prison rules and regulations. (*Id.*, PageID.128.) He states that he is more likely than other inmates to receive disciplinary infractions. (*Id.*) He states that the long-term placement in the Start Now unit increases the risk of decompensation and the risk that he and other inmates will "become

more dysfunctional and harder to manage." (*Id.*) Overall, Plaintiff equates his placement in the Start Now unit as the "mental equivalent of putting an asthmatic in a place with little air to breath[e]." (*Id.*, PageID.130.)

Based upon the foregoing, Plaintiff asserts violations of his First, Eighth, and Fourteenth Amendment rights. (*Id.*, PageID.131–32.) He also asserts violations of the Americans with Disabilities Act (ADA), the Protection and Advocacy for Individuals with Mental Illness (PAIMI) Act, and the Racketeer Influenced and Corrupt Organizations (RICO) Act. (*Id.*, PageID.131–33.) Plaintiff seeks declaratory and injunctive relief, as well as compensatory, punitive, and nominal damages. (*Id.*, PageID.135–140.)

## II.    Objection to September 13, 2024, Order

Plaintiff has filed an objection (ECF No. 7) to the Court's September 13, 2024, order severing each of the 16 plaintiffs' claims into 16 related cases and directing each Plaintiff to file an amended complaint in his own case. Plaintiff argues that the Court should not have ordered severance because all Plaintiffs' "claims are related to conditions and symptoms in the Start program." (*Id.*, PageID.105.) Plaintiff requests class certification and appointment of counsel under Rule 23 of the Federal Rules of Civil Procedure. (*Id.*)

The purposes of class action suits are judicial economy and the opportunity to bring claims that would not be brought absent the class action because it might not be economically feasible to bring them as individual claims. *See Reeb v. Ohio Dep't of Rehab. & Corr.*, 435 F.3d 639, 650 (6th Cir. 2006). Federal Rule of Civil Procedure 23, which governs class certification, provides that:

> One or more members of a class may sue . . . as representative parties on behalf of all only if (1) the class is so numerous that joinder . . . is impracticable; (2) there

8

are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The four prerequisites for class certification are respectively referred to as "numerosity, commonality, typicality, and adequacy of representation." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010); *see also Daffin v. Ford Motor Co.*, 458 F.3d 549 (6th Cir. 2006).

Thus, for a case to proceed as a class action, the Court must be satisfied on the grounds enumerated above, including the adequacy of class representation. *See* Fed. R. Civ. P. 23(a)(4). Plaintiff bears the burden of establishing the right to class certification. *See In re Am. Med. Sys.*, 75 F.3d 1069, 1086 (6th Cir. 1996).

It is well established that *pro se* litigants are "inadequate class representatives." *Garrison v. Mich. Dep't of Corr.*, 333 F. App'x 914, 919 (6th Cir. 2009) (citations omitted); *Ziegler v. Michigan*, 59 F. App'x 622, 624 (6th Cir. 2003) (recognizing that "[g]enerally pro se prisoners cannot adequately represent a class" (citing *Fymbo v. State Farm & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000))); *Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008) (recognizing that "[*p*]*ro se* prisoners generally may not bring class action lawsuits concerning prison conditions" (citing *Dean v. Blanchard*, 865 F.2d 257 (6th Cir. 1988) (table); *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975))); *Palasty v. Hawk*, 15 F. App'x 197, 200 (6th Cir. 2001) (concluding that "pro se prisoners are not able to represent fairly [a] class" (citing *Fymbo*, 213 F.3d at 1321; *Oxendine,* 509 F.2d at 1407)); *Marr v. Michigan*, No. 95-1794, 1996 WL 205582, at *1 (6th Cir. Apr. 25, 1996) (noting that "an imprisoned litigant who is not represented by counsel may not represent a class of inmates because the prisoner cannot adequately represent the interests

9

of the class" (citing *Oxendine*, 509 F.2d at 1407)). Because Plaintiff is an incarcerated *pro se* litigant, the Court finds that he is not an appropriate representative of a class. Accordingly, his request for class certification will be denied.

The Court also declines to reconsider its order severing each Plaintiff's claims into separate actions. Although there are slight overlaps in questions of law and fact because each Plaintiff's case concerns placement in a Start Now unit, allowing all plaintiffs to proceed in one action would result in the myriad difficulties discussed by the Court in its September 13, 2024, order. Notably, not all 16 Plaintiffs are currently incarcerated at the same location, making it essentially impossible for all Plaintiffs to sign all pleadings, motions, etc. Accordingly, for the reasons stated above, as well as for the reasons already given in the Court's September 13, 2024, order, Plaintiff's objection (ECF No. 7) will be denied.

## III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

10

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

### A.    Defendant Unknown Party #1 and Unknown Parties

Plaintiff has named IBC Deputy Warden Unknown Party #1, as well as Unknown Parties (referred to as ICF staff), as Defendants in this matter. Plaintiff, however, fails to mention these Defendants in the body of his amended complaint.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Any "[s]ummary reference to a single, five-headed 'Defendants' does not support a reasonable inference that *each* Defendant is liable." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted). Moreover,

> [the Sixth Circuit] has consistently held that damage claims against governmental officials alleged to arise from violations of constitutional rights cannot be founded upon conclusory, vague or general allegations, but must instead, allege facts that show the existence of the asserted constitutional rights violation recited in the complaint and what *each* defendant did to violate the asserted right.

*Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002) (citation omitted). Therefore, Plaintiff's claims against Defendants Unknown Party #1 and Unknown Parties fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). In other words, Plaintiff has

11

failed to state a claim upon which relief may be granted against Defendants Unknown Party #1 and Unknown Parties, and the Court, therefore, will dismiss these individuals from the case.

**B.      Section 1983 Claims**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

**1.      First Amendment**

Plaintiff contends that Defendants violated his First Amendment rights by holding him in the Start Now unit "as direct retaliation for grievances [and] litigating against MDOC employees at IBC and involvement with [the] National Appellate Clinic." (Am. Compl., ECF No. 8, PageID.132.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018). However, "retaliation" is easy to allege and it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Here, Plaintiff does nothing more than use the word retaliation in his complaint. Plaintiff alleges no *facts* indicating that any of the named Defendants were aware of his grievances and that they continued to hold him in the Start Now unit solely because of those grievances. In short, Plaintiff has not presented any facts to support his conclusory assertion that his placement in the Start Now unit was motivated by Plaintiff's exercise of his First Amendment rights. Accordingly, the Court will dismiss Plaintiff's First Amendment retaliation claims.

### 2.    Eighth Amendment

Plaintiff also suggests that his placement and confinement in the Start Now unit violates his Eighth Amendment rights. (Am. Compl., ECF No. 8, PageID.131.) Specifically, Plaintiff contends that all Defendants, with the exception of Defendant Unknown Party #2, violated his

Eighth Amendment rights by subjecting him to prolonged solitary confinement, depriving him of mental health treatment, depriving him of clean living conditions, and subjecting him to "extreme noise [and] psychological torture." (*Id.*) He also avers that Defendant Unknown Party #2 violated his Eighth Amendment rights by "depriving [Plaintiff] of access to basic necessities when blocking Secure Pak access." (*Id.*)

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. Further, the Eighth Amendment protects against the denial of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). However, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, not "every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (1987). "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim regarding the conditions of confinement, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that Defendants acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate indifference standard includes both

14

objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

a.    **Placement in and Continued Detention in the Start Now Program**

In his amended complaint, Plaintiff contends that the Start Now program is an unconstitutional solitary confinement/punishment targeting mentally ill inmates like himself. Plaintiff contends that Defendants Atearn, Macauley, Brokaw, Hadden, Addis, and Houghton were responsible for referring him for placement in the ICF Start Now unit. (Am. Compl., ECF No. 8, PageID.120.) He alleges that while in the Start Now unit, he received little to no mental health treatment. He also asserts that he must be handcuffed whenever removed from his cell, that he is not allowed to use the gym for exercise, and that he is not allowed to clean his cell properly. Throughout his amended complaint, Plaintiff alleges that his continued placement in the Start Now unit has aggravated his mental illness. Plaintiff alleges that he notified Defendants Washington, Bush, Heydens, Davids, Bonn, Brokaw, Dunigan, Luther, Smith, Simon, Saad, Schafer, Norton, Bookie, and Maranka about his mental illnesses and his aggravated symptoms, to no avail. (*Id.*)

First, while Plaintiff equates the Start Now unit to segregation, placement in segregation, without more, is a routine discomfort that is "part of the penalty that criminal offenders pay for their offenses against society." *Hudson*, 503 U.S. at 9 (quoting *Rhodes*, 452 U.S. at 347). Here, Plaintiff contends that IBC Defendants Atearn, Macauley, Hadden, Addis, and Houghton were involved only in Plaintiff's initial referral to the Start Now unit at ICF. Plaintiff alleges no facts suggesting that these individuals had any involvement in his continued placement in the unit. Plaintiff's Eighth Amendment claims against Defendants Atearn, Macauley, Hadden, Addis, and Houghton will, therefore, be dismissed.

With respect to Defendants Washington, Bush, and Heydens, Plaintiff does not set forth any facts alleging that they were involved in the decision to keep Plaintiff in the Start Now unit at ICF. A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). Because Plaintiff does not allege facts suggesting that Defendants Washington, Bush, and Heydens had any active involvement with Plaintiff's detention in the Start Now unit, his Eighth Amendment claims against them will be dismissed. *See Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

As to Defendants Davids, Bonn, Brokaw, Dunigan, Luther, Smith, Simon, Saad, Schafer, Norton, Bookie, and Maranka, Plaintiff alleges that these individuals were aware of Plaintiff's serious mental health issues, but continued to house him in a restrictive segregation setting for a period of approximately two years. Although Plaintiff has by no means proven his Eighth Amendment claims, at this stage of the proceedings, taking Plaintiff's factual allegations as true and in the light most favorable to him, the Court will not dismiss Plaintiff's Eighth Amendment

claim regarding Plaintiff's continued detention in segregation-like conditions against Defendants Davids, Bonn, Brokaw, Dunigan, Luther, Smith, Simon, Saad, Schafer, Norton, Bookie, and Maranka. *Cf. J.H. v. Williamson Cnty., Tenn.*, 951 F.3d 709, 719 (6th Cir. 2020) ("Placement of a mentally-ill detainee in solitary confinement 'raises a genuine concern that the negative psychological effects of his segregation will drive him to self-harm.'" (citation omitted)); *Snider v. Saad*, No. 1:20-cv-963, 2020 WL 6737432, at *7–8 (W.D. Mich. Nov. 17, 2020) (concluding that the prisoner-plaintiff's Eighth Amendment claim against members of the SCC regarding his conditions of confinement, which he alleged were more severe than typical conditions of segregation, and which he alleged had a particularly "deleterious impact on him" due to his mental illness, could not be dismissed on initial review).

### b.    Denial of Secure Pak Access

Plaintiff also contends that Defendant Unknown Party #2 violated his Eighth Amendment rights by "depriving [Plaintiff] of access to basic necessities when blocking Secure Pak access." (Am. Compl., ECF No. 8, PageID.131.) As set forth *supra*, Plaintiff alleges that Defendant Unknown Party #2 refused to allow Plaintiff to order a Secure Pak, and that Plaintiff learned of this fact from his mother on October 31, 2022. (*Id.*, PageID.119.) Plaintiff avers that he "had no other means to obtain [hygiene], medication, shower shoes[,] or dietary supplements." (*Id.*)

Plaintiff's conclusory allegations are insufficient to set forth an Eighth Amendment claim against Defendant Unknown Party #2. Per the MDOC's website, the Secure Pak program, also referred to as the Friends and Family program, "is a Department-approved customized package program that allows family members and others to send authorized items to prisoners while safeguarding against the introduction of contraband." *See* https://www.michigan.gov/corrections /for-families/family-and-friends-securepak-program-how-it-works (last visited Oct. 18, 2024).

Prisoners are also permitted to directly order Secure Paks themselves. *Id.* However, prisoners in segregation are not eligible to receive Secure Paks. *Id.* Per MDOC policy, Start Now units are alternatives to administrative segregation. *See* Director's Office Memorandum (DOM) 2024-4 (eff. Jan. 1, 2024). Placement in segregation, without more, is a routine discomfort that is "part of the penalty that criminal offenders pay for their offenses against society." *Hudson*, 503 U.S. at 9 (quoting *Rhodes*, 452 U.S. at 347). Thus, any denial of privileges as a result of Plaintiff's placement in the Start Now unit cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008).

While Plaintiff was denied Secure Paks while in the Start Now unit, he does not set forth sufficient *facts* from which the Court could conclude that he was denied basic human needs and requirements. Plaintiff states in a conclusory manner that he had no other means to obtain hygiene items, medication, shower shoes, or dietary supplements. However, Plaintiff fails to allege any facts suggesting that the shower shoes and dietary supplements are akin to basic human necessities. Furthermore, while hygiene items and medications can certainly qualify as basic human necessities, Plaintiff provides no facts regarding how long he had no access to these items. Denial of such items for short periods of time constitute temporary inconveniences that do not rise to the level of an Eighth Amendment violation. *See, e.g.*, *Matthews v. Murphy*, No. 90-35458, 1992 WL 33902, at *4 (9th Cir. Feb. 25, 1992) (holding that an inmate's allegations that he was deprived of a towel, toothbrush, toothpowder, comb, soap, and other personal hygiene items for approximately 34 days did not rise to the level of a constitutional violation); *Crump v. Janz*, No. 1:10-cv-583, 2010 WL 2854266, at *4 (W.D. Mich. July 19, 2010) (concluding that the denial of a toothbrush and toothpaste for 35 days constituted a mere temporary inconvenience); *Robertson v. McRay*, No.

18

03-22823-CIV, 2006 WL 2882502, at *7 (S.D. Fla. July 28, 2006) (finding that the failure to provide indigent kits containing hygiene items and envelopes, stamps and paper more than half the time over a two-year period did not violate the Eighth Amendment). Moreover, Plaintiff alleges no harm or risk of harm from his failure to receive these items. *See Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010) (recognizing that the objective component of the Eighth Amendment test is typically not met by temporary deprivations that result in no physical injury); *James v. O'Sullivan*, 62 F. App'x 636, 639 (7th Cir. 2003) (holding that a 49-day denial of a comb, deodorant, and cleaning supplies, none of which jeopardized the prisoner-plaintiff's health, failed to satisfy the objective component of an Eighth Amendment claim). Accordingly, for the reasons set forth above, Plaintiff's Eighth Amendment claim against Defendant Unknown Party #2 will be dismissed.

### 3.    Fourteenth Amendment

Plaintiff also contends that Defendants violated his Fourteenth Amendment rights by placing him in and continuing his detention in the Start Now unit. Specifically, Plaintiff alleges that all Defendants, with the exception of Defendants Unknown Parties #1 and #2, violated his due process rights by forcing him to "remain in segregation past 7 days without a hearing for over 6 months," and that they violated his equal protection rights by depriving him of "general population privileges, school[,] and work programming." (Am. Compl., ECF No. 8, PageID.132.) Plaintiff also contends that Defendant Unknown Party #2 violated his equal protection rights by depriving Plaintiff "of basic necessities from the prison store/Secure Paks while allowing similarly situated prisoners to order those items." (*Id.*, PageID.131.)

#### a.    Procedural Due Process

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005).

19

To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The United States Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

Here, Plaintiff alleges that he was involuntarily placed in and continuously detained in ICF's Start Now unit. Plaintiff, however, does not allege that his placement in the Start Now unit affected the duration of his sentence. Moreover, as explained below, Plaintiff has failed to allege facts to suggest that the Start Now program is an atypical and significant deprivation.

The Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum*,

427 U.S. at 228–29. Furthermore, as noted above, Plaintiff describes the Start Now program at ICF as akin to administrative segregation. With respect to an inmate's detention in segregation, generally only periods of segregation lasting for a year or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (concluding that thirteen years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (finding that eight years of segregation implicates a liberty interest); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest).

Here, Plaintiff suggests that he has been in the Start Now unit for approximately two years. Although the length of Plaintiff's placement in the Start Now unit invariably implicates a liberty interest under the authority set forth above, Plaintiff fails to allege sufficient facts to suggest that his placement there is an atypical and significant deprivation. *See, e.g.*, *Jackson v. Berean*, No. 1:18-cv-1075, 2019 WL 1253196, at *11 (W.D. Mich. Mar. 19, 2019) ("[The Start program], which is less restrictive on the whole than the administrative segregation at issue in *Sandin*, necessarily falls short of an atypical and significant hardship."), *aff'd*, No. 19-1583, 2019 WL 6208147 (6th Cir. Nov. 19, 2019); *Dickerson v. Davids*, No. 1:21-cv-401, 2021 WL 3928667, at *4 (W.D. Mich. Sept. 2, 2021).

In any event, even though Plaintiff suggests that he was forced to "remain in segregation past 7 days without a hearing for over 6 months" (Am. Compl., ECF No. 8, PageID.132), Plaintiff also acknowledges that 30-day reviews regarding inmates' placement in the Start Now unit occur. (*Id.*, PageID.126.) While Plaintiff suggests that these reviews are not effective, he does not set forth facts suggesting that his continued placement in the Start Now unit has never been reviewed.

Even where a liberty interest is shown, the due process claim "is not complete unless and until the State fails to provide due process." *Zinermon v. Burch,* 494 U.S. 113, 126 (1990). The Supreme Court has indicated that "[p]rison officials must engage in some sort of periodic review of the confinement of . . . inmates [in segregation]." *Hewitt v. Helms,* 459 U.S. 460, 477 n.9 (1983). "This review will not necessarily require that prison officials permit the submission of any additional evidence or statements." *Id.* However, the decision to continue confinement must be supported by "some evidence." *Superintendent v. Hill,* 472 U.S. 445, 454 (1985). "This requirement balances the procedural rights of prisoner against the need of prison officials to have freedom to operate their facilities on a day-to-day basis." *Harris,* 465 F. App'x at 484. In short, where an inmate's confinement in segregation implicates a liberty interest, he is entitled to a "periodic review of his confinement, supported by some evidence or indicia of reliability." *Id.* at 485; *see also Selby*, 734 F.3d at 559–60 (holding that the mere formality of holding reviews is not sufficient; whether a given process is meaningful and adequate is a question of fact).

Plaintiff describes himself as "often hav[ing] difficulty conforming to prison rules and regulations, and [is] more likely than other prisoners to be cited for disciplinary infractions." (Am. Compl., ECF No. 8, PageID.128.) Moreover, the exhibits Plaintiff attached to his initial complaint indicate that he was sent to the Start Now program at ICF "from IBC for inability to have behavioral needs managed at level 4." (ECF No. 1-1, PageID.81.) Furthermore, as noted above, Plaintiff does not set forth facts suggesting that he was not regularly evaluated for release after the initial 6-month period about which he complains. Accordingly, for the reasons set forth above, the Court will dismiss Plaintiff's Fourteenth Amendment procedural due process claims.

### b.    Substantive Due Process

To the extent that Plaintiff intended to raise substantive due process claims, he fails to state such claims. "Substantive due process . . . serves the goal of preventing governmental power from

being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). Specifically, "[s]ubstantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

Here, Plaintiff fails to set forth any facts from which the Court could infer conduct that is sufficiently outrageous to support a substantive due process claim. While it is clear that Plaintiff disagrees with his placement in the Start Now program, his allegations fall short of showing the sort of egregious conduct that would support a substantive due process claim. Accordingly, any intended substantive due process claims against Defendants will also be dismissed.

### c.    Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a

term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Plaintiff suggests that all Defendants, with the exception of Defendants Unknown Parties #1 and #2, violated his equal protection rights by depriving him of "general population privileges, school[,] and work programming." (Am. Compl., ECF No. 8, PageID.132.) Plaintiff also contends that he was deprived of the gym, law library access, Secure Paks, and items purchased from the prisoner benefit fund—all privileges that are enjoyed by general population inmates. He also suggests that Defendant Unknown Party #2 violated his equal protection rights by allowing similarly situated inmates to order Secure Paks, but blocking Plaintiff's access to them. (*Id.*, PageID.131.)  Plaintiff's own allegations, however, fail to suggest that general population inmates are similar to inmates in the Start Now unit in all relevant aspects. Likewise, Plaintiff fails to set forth facts suggesting that those inmates who were allowed to order Secure Paks were similar to Plaintiff in all relevant aspects. Instead, any allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Accordingly, the Court will dismiss Plaintiff's Fourteenth Amendment equal protection claims.

## C.    ADA Claims

Plaintiff also contends that Defendants violated his rights under the ADA, 42 U.S.C. §§ 12101 *et seq.*, by "discriminating, excluding[,] and denying Plaintiff" several privileges and programming while in the Start Now unit. (Am. Compl., ECF No. 8, PageID.133.) Specifically, Plaintiff claims that he has been denied these various privileges and programs because of his mental illness. (*Id.*)

24

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In the ADA, the term "disability" is defined as follows: "[1] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [2] a record of such an impairment; or [3] being regarded as having such an impairment." *Id.* § 12102(2).

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–12 (1998). The proper defendant for Title II ADA claims is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002); *see, e.g.*, *Tanney v. Boles*, 400 F. Supp. 2d 1027, 1044 (E.D. Mich. 2005) (citations omitted). Here, the only Defendants Plaintiff has named in their official capacities are Defendants Washington and Davids. Because Plaintiff may not pursue ADA claims against Defendants in their personal capacities, any such claims will be dismissed.

As to Plaintiff's official capacity claims, the State of Michigan, acting through the MDOC, is not necessarily immune from Plaintiff's claims under the ADA. *See, e.g.*, *Tanney*, 400 F. Supp. 2d at 1044–47. The ADA "validly abrogates state sovereign immunity" for "conduct that *actually* violates the Fourteenth Amendment[.]" *United States v. Georgia*, 546 U.S. 151, 159 (2006). If conduct violates the ADA but not the Fourteenth Amendment, then the Court must determine whether the ADA validly abrogates state sovereign immunity. *Id.* At this stage of the proceedings, the Court will presume that the ADA validly abrogates state sovereign immunity for Plaintiff's ADA claims.

Turning to the merits of Plaintiff's ADA claims, as noted above, Plaintiff suggests that mentally ill inmates, including himself, in the Start Now program are not provided various programs and services because of their mental disabilities. At this stage of the proceedings, taking Plaintiff's factual allegations in the light most favorable to him, the Court concludes that Plaintiff's ADA official capacity claims may not be dismissed on initial review.

However, the courts have recognized that, where an entity is named as a defendant, official capacity claims against employees of the entity are redundant. *See Foster v. Michigan*, 573 F. App'x 377, 390 (6th Cir. 2014) (finding official capacity suits against defendant agency's employees superfluous where the state and agency were also named as defendants); *see also Faith Baptist Church v. Waterford Twp.*, 522 F. App'x 332, 327 (6th Cir. 2013) ("Having sued Waterford Township, the entity for which Bedell was an agent, the suit against Bedell in his official capacity was superfluous.") (citing *Foster*); *Petty v. Cnty. of Franklin*, 478 F.3d 341, 349 (6th Cir. 2007) ("To the extent that Petty's suit is against [Sheriff] Karnes in his *official* capacity, it is nothing more than a suit against Franklin County itself."), *abrogated on other grounds by Twombly*, 550 U.S. at 561–62, and *Iqbal*, 556 U.S. at 679. Likewise, Plaintiff's official capacity claims against Defendants Washington and Davids are redundant of one another because each constitutes an identical suit against the MDOC or the State of Michigan for a violation of the ADA. *See Foster*, 573 F. App'x at 390 (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). The Court, therefore, will allow Plaintiff's official capacity claim under the ADA only against Defendant Washington as the highest ranking official. Accordingly, Plaintiff's official capacity ADA claim against Defendant Davids will be dismissed.

### D.    PAIMI Act Claims

Plaintiff also contends that Defendants violated the PAIMI Act, 42 U.S.C. § 10801 *et seq.*, by placing him in the Start Now Unit. (Am. Compl., ECF No. 8, PageID.131.) The PAIMI Act

"assists States in the creation of a system of protection and advocacy for individuals with mental illness." *Jennings v. Bennett*, No. 1:17-cv-555, 2017 WL 3712176, at \*12 (W.D. Mich. Aug. 29, 2017) (citing 42 U.S.C. § 10801). The Act does authorize legal actions. *See* 42 U.S.C. § 10807. However, the Act does not authorize the mentally ill individuals to bring such an action; instead, it authorizes actions by the systems, agencies, or organizations created by PAIMI to protect and advocate for those suffering from mental illness. *Id.*; *see also Sardakowski v. Ivandick*, 653 F. App'x 596, 597 (10th Cir. 2016) (affirming district court's dismissal as frivolous a private action under PAIMI); *Lawson v. Nat'l Church Residencies*, No. 5:15-cv-332, 2016 WL 2643155, at \*2 (N.D. Fla. Apr. 6, 2016) ("PAIMI does not create an enforceable private right of action."), *R. & R. accepted and adopted*, 2016 WL 3566856 (N.D. Fla. June 27, 2016); *Darnell v. Jones*, No. CIV-12-1065, 2014 WL 4792144, at \*3 n.4 (W.D. Okla. Sept. 24, 2014) ("PAIMI Act authorizes certain protection and advocacy systems to bring suit regarding access to patient records; its provisions do not provide a private cause of action to" a plaintiff who is an inmate) (citations omitted), *aff'd*, 610 F. App'x 720 (10th Cir. 2015); *Romeo v. Aid to Developmentally Disabled, Inc.*, No. 11-CV-6340, 2013 WL 5532649, at \*2 (E.D.N.Y. Oct. 3, 2013) (granting motion to dismiss on ground that the individual defendants were "not state actors" for purposes of 42 U.S.C. §§ 1983, 1985, 1986, and "that PAIMI create[d] no privately enforceable federal rights"); *Burke v. North Dakota Dep't Corr. & Rehab.*, No. 1:07-cv-4, 2007 WL 1456217, at \*8 (D.N.D. May 16, 2007) (language of PAIMI "reveals no intent on the part of Congress to provide private remedy to review individual decisions of the protection and advocacy organizations regarding whether to provide services to particular individuals"). Accordingly, for the reasons noted above, Plaintiff's PAIMI Act claims against Defendants will be dismissed.

### E.    RICO Claims/Embezzlement

Plaintiff also suggests that Defendants violated his rights under the RICO Act, 18 U.S.C. §§ 1961 *et seq.*, by "using the Start program as a front to embezzle funds from the federal government through the PAIMI Act while depriving Plaintiff of treatment and benefits." (Am. Compl., ECF No. 8, PageID.133.)

Plaintiff does not state upon which provision of RICO he bases his claims. However, § 1964(c) of the RICO Act provides for a private cause of action and states:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

18 U.S.C. § 1964(c). Section 1962 makes it illegal to engage in a pattern of racketeering activity. 18 U.S.C. § 1962(c). "Racketeering activity" is defined in § 1961(1) in terms of a long list of federal and state crimes, including mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343. A "pattern of racketeering activity" requires at least two acts of racketeering activity within a ten-year period, 18 U.S.C. 1961(5), generally referred to as the "predicate acts" or "predicate offenses" underlying the RICO claim.

The Sixth Circuit and other federal courts consistently have rejected RICO claims concerning prison conditions. *See, e.g.*, *Lee v. Michigan Parole Bd.,* 104 F. App'x 490, 493 (6th Cir. 2004) (affirming dismissal of conclusory RICO claim because plaintiff alleged no injury to his business or property); *Looper v. Gibson,* 63 F. App'x 877, 878 (6th Cir. 2003) (same); *Ziegler v. McGinnis*, 32 F. App'x 697, 699 (6th Cir. 2002) (finding no RICO claim based on MDOC telephone policy); *Hyland v. Martin*, No. 00-1269, 2000 WL 1647952, at *1 (6th Cir. Oct. 25, 2000) (affirming dismissal of prisoner RICO conspiracy claim regarding restrictions imposed on photocopying credit card); *see also Jenkins v. C.S.C./C.C.C.F. Corr. Services Corp.*, No. 99-1518,

2000 WL 1179772, at *1 (10th Cir. Aug. 21, 2000) (dismissing prisoner RICO claim alleging embezzlement from inmate accounts); *Petersen v. Shanks*, 149 F.3d 1140, 1145 (10th Cir. 1998) (affirming dismissal of RICO claims alleging warden accepted bribes from prison food services company); *Taylor v. Ornoski*, No. C 06-2224 MMC (PR), 2006 WL 1646148, at *2 (N.D. Cal. June 14, 2006) (dismissing prisoner RICO claims seeking to challenge regulations restricting vendors who provide telephone service to inmates).

Here, Plaintiff's suggestion that Defendants violated RICO is no more than a conclusory assertion. Plaintiff fails to identify predicate acts upon which to base a RICO claim. *See Iqbal*, 556 U.S. at 678–79 (requiring more than conclusory labels); *Twombly*, 550 U.S. at 555 (same). Moreover, Plaintiff cannot maintain RICO claims because he does not allege any injury to business or property, which is a prerequisite for a successful civil RICO claim. *See* 18 U.S.C. § 1964(c); *Ziegler*, 32 F. App'x at 699; *see also Lee*, 104 F. App'x at 493; *Looper*, 63 F. App'x at 878. Accordingly, Plaintiff's RICO claims will be dismissed.

Moreover, with respect to Plaintiff's reference to embezzlement, embezzlement is a crime under federal or state law and is not a private cause of action. *Cf. Ticor Title Ins. Co. v. Nat'l Abstract Agency, Inc.*, No. 05-CV-73709-DT, 2007 WL 2710113, at *10 (E.D. Mich. Sept. 13, 2007) (discussing that although "in certain circumstances, [courts may] infer a private cause of action, where there is a bare criminal statute, with no indication that civil enforcement is available, a private cause of action will not be inferred" and concluding that a claim for embezzlement alleges "violation of [a] purely criminal statute[ ]" (citations omitted)); *Stern v. Epps*, 464 F. App'x 388, 393 (5th Cir. 2012) ("Embezzlement and money laundering are crimes under Mississippi law, not private causes of action." (citations omitted)). Accordingly, any intended embezzlement claims will also be dismissed.

**Conclusion**

The Court will deny Plaintiff's objection (ECF No. 7) to the Court's September 13, 2024, order. Moreover, having conducted the review required by the PLRA, the Court determines that Defendants Bush, Heydens, Unknown Parties (referred to as ICF staff), Atearn, Macauley, Hadden, Addis, Houghton, Unknown Party #1, and Unknown Party #2 will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court will also dismiss, for failure to state a claim, the following claims against Defendants Washington, Davids, Bonn, Brokaw, Dunigan, Luther, Simon, Smith, Saad, Shafer, Norton, Bookie, and Maranka: (1) Plaintiff's First Amendment retaliation claims; (2) Plaintiff's Eighth Amendment claim against Defendant Washington; (3) Plaintiff's Fourteenth Amendment due process and equal protection claims; (4) Plaintiff's ADA claims against Defendants Davids, Bonn, Brokaw, Dunigan, Luther, Simon, Smith, Saad, Shafer, Norton, Bookie, and Maranka; (5) Plaintiff's PAIMI Act claims; and (6) Plaintiff's RICO Act/embezzlement claims. The following claims remain in the case: (1) Plaintiff's Eighth Amendment claims against Defendants Davids, Bonn, Brokaw, Dunigan, Luther, Simon, Smith, Saad, Shafer, Norton, Bookie, and Maranka; and (2) Plaintiff's ADA claim against Defendant Washington.

An order consistent with this opinion will be entered.

Dated: October 22, 2024                              /s/ Hala Y. Jarbou
                                                     HALA Y. JARBOU
                                                     CHIEF UNITED STATES DISTRICT JUDGE