UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALRELIO EVANS,

        Plaintiff,

v.

HEIDI WASHINGTON, *et al.*,

        Defendants.

                                      /

Case No. 1:24-cv-913

Hon. Hala Y. Jarbou

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action by plaintiff Alrelio Evans, a prisoner in the custody of the Michigan Department of Corrections (MDOC). Plaintiff filed an amended complaint (ECF No. 8) brought pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* (ADA), the Protection and Advocacy for Individuals with Mental Illness Act, 42 U.S.C. § 10801 *et seq.* (PAIMI), and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq*. (RICO). *See* Opinion (ECF No. 11, PageID.154). The alleged incidents occurred at the MDOC's Ionia Correctional Facility (ICF) and Bellamy Creek Correctional Facility (IBC).

On initial review of the amended complaint, the Court dismissed plaintiff's claims against defendants Bush, Heydens, Unknown Parties (referred to as ICF staff), Atearn, Macauley, Hadden, Addis, Houghton, Unknown Party #1 and Unknown Party #2. *See* Opinion (ECF No. 11) and Order (ECF No. 12).

The following claims remain in the case: (1) plaintiff's Eighth Amendment claims against defendants ICF Warden John Davids, ICF Deputy Warden Bonn, ICF Assistant Deputy

1

Warden (ADW) R. Brokaw, ICF ADW J. Dunigan, ICF Residential Unit Manager (RUM) Luther, ICF Prison Counselor (PC) Simon, ICF PC Walton L. Smith, ICF Psychiatrist Saad, ICF Psychiatrist Shafer, ICF Psychologist/Social Worker Michelle Norton, ICF Psychologist Bookie, and ICF Unit Chief Maranka; and, (2) plaintiff's ADA claim against MDOC Director Heidi Washington.  Opinion at PageID.149.

This matter is now before the Court on two motions (ECF Nos. 34 and 36).  First, defendants Washington, Davids, Bonn, Brokaw, Dunigan, Luther, Simon, Smith, Norton, Bookie, and Maranka (collectively the "MDOC Defendants") filed a motion for summary judgment based on exhaustion (ECF No. 34).  Second, defendants Hanna Saad, M.D. and Tracy Shafer, N.P. filed a combined "Motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) or in the alternative for summary judgment for failure to exhaust administrative remedies" (ECF No. 36).  Plaintiff did not oppose the motions.

I.     **Background**

Plaintiff's amended complaint involves his time spent in the Start Now Unit. Opinion at PageID.150.  As this Court explained,

> The mission statement for the MDOC Start Units reads as follows: "To provide a secure general population alternative to administrative segregation while providing programming and other structured and unstructured out of cell activities based upon the prisoner's positive adjustment, with the goal of reintegration into traditional general population." *See, e.g., Randall v. Washington*, No. 1:24-cv-344, 2024 WL 3158258, at *2 (W.D. Mich. June 25, 2024); *Miller v. Davids*, No. 1:20-cv-108, 2022 WL 329844, at *9 (W.D. Mich. Jan. 6, 2022).

*Id*. at fn. 1.

Plaintiff arrived at ICF's Start Now Unit on September 23, 2022.  *Id.* at PageID.151. "[Plaintiff] claims that he was 'sent to a higher security level' and 'spent over 7 days (over 2 years now) in temporary segregation due to lack of bed space in the Start Unit.' " *Id*.

> Plaintiff sent notice to Defendants Washington, Bush, Heydens, Davids, Bonn, Brokaw, Dunigan, Luther, Smith, Simon, Saad, Schafer [sic], Norton, Bookie, and Maranka that he was in temporary segregation for more than 7 days and that he is mentally ill. Plaintiff explained that he had been diagnosed with several mental health disorders and that he had "experienced increased depression, anxiety, delusions, post-traumatic slave syndrome, post-traumatic stress disorder, psychosis, claustrophobia, suicidal ideation, paranoia[,] and schizoaffective disorder due to prolonged solitary confinement."

*Id*. (internal citations omitted).

Among other things, plaintiff alleged "that he suffered from weight loss and delirium due to engaging in hunger strikes" and that the program "is falsely advertised as a mental health program 'so that Defendants can accumulate additional public funds and funds from philanthropist organizations.' " *Id*. at PageID.152.

In addition,

> Plaintiff contends that the Start Now program is unconstitutional because it "denies religious services, clean environment, law library access, . . . exaggerate[s] programming[,] and create[s] mental illnesses." Plaintiff claims that inmates in the program are "treated sadistically and maliciously under the belief [they] are too mentally ill to navigate through the courts." Plaintiff "is not allowed to clean his cell properly and sometimes not at all." He contends that he must be escorted to the shower and yard cages in handcuffs, and "is fed in his filthy cell." Plaintiff is not allowed to go to the gym for exercise. He "is required to attend SCC reviews monthly like all other [administrative segregation] prisoners." He suggests that the Start Now program "is merely a front to hold Plaintiff in segregation indefinitely."

*Id*. at PageID.152-153 (internal citations omitted).

## II. Motion to dismiss

Defendants Dr. Saad and N.P. Shafer moved to dismiss the amended complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). The Court conducted an initial review of plaintiff's amended complaint pursuant to 28 U.S.C. § 1915(e), § 1915A and 42 U.S.C. § 1997e(c), to determine whether it is frivolous, malicious, fails to state a claim upon which relief can be granted or seeks monetary relief against a defendant that is immune from such relief. *See*

Opinion (ECF No. 11). Upon this initial review, the Court concluded that the amended complaint was not subject to dismissal for any of the reasons listed above and that it stated Eighth Amendment claims against Dr. Saad and N.P. Shafer. *See* Opinion at PageID.148-149, 156-163. In reaching this conclusion, the Court determined that,

> Although Plaintiff has by no means proven his Eighth Amendment claims, at this stage of the proceedings, taking Plaintiff's factual allegations as true and in the light most favorable to him, the Court will not dismiss Plaintiff's Eighth Amendment claim regarding Plaintiff's continued detention in segregation-like conditions against Defendants Davids, Bonn, Brokaw, Dunigan, Luther, Smith, Simon, Saad, Schafer [sic], Norton, Bookie, and Maranka.

*Id*. at PageID.162-163. There is no reason for the Court to perform a second review of plaintiff's allegations. Accordingly, Dr. Saad and N.P. Shafer's motions to dismiss should be denied.[1]

### III.    Summary Judgment

#### A.    Legal standard

Defendants have moved for summary judgment for lack of exhaustion. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

---

[1] In reaching this determination, the Court notes that defendants Dr. Saad and N.P. Shafer did not ask the Court to reconsider the screening opinion. *See* Saad and Shafer Brief (ECF No. 36, PageID.445-446).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

Plaintiff did not file a responsive brief as required by W.D. Mich. LCivR 7.2(c), "any party opposing a dispositive motion shall, within twenty-eight (28) days after service of the motion, file a responsive brief and any supporting materials". "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). The trial court is required to "intelligently and carefully review the legitimacy of such unresponded-to motion" and cannot "blithely accept the conclusions argued in the motion." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Id*. at 405.[2]

---

[2] The Court notes that plaintiff included a "verification" at the end of his complaint, presumably so that it could serve as supporting material for a response to a motion for summary judgment. *See* Amend. Compl. at PageID.141; *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (a verified complaint has the same force and effect as an affidavit for purposes of responding to a motion for summary judgment). Here, there are no verified allegations which address the exhaustion issues raised in defendants' briefs. Even if plaintiff had included some facts regarding exhaustion, it is not the function of this Court to create legal arguments for plaintiff to respond to defendants' motion. "The Court's role is adjudicatory; it is not an advocate." *Burley v. Miller*, 241 F. Supp. 3d 828, 840 (E.D. Mich. 2017).

### B. Lack of Exhaustion

#### 1. Exhaustion requirement

The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

#### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive ("PD") 03.02.130 (effective March 18, 2019). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within

6

five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ Q and S. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ W. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ DD. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ HH.

        **C.**      **Discussion**

        **1.**      **MDOC Defendants**

MDOC defendants have identified three grievances which plaintiff filed through Step III which could be relevant to his claims raised in the amended complaint: ICF-23-07-0694-28c ("694"); ICF-22-11-1280-27z ("1280"); and, ICF-22-11-1285-28c ("1285") (119-123). MDOC Defendants' Brief (ECF No. 35, PageID.282-283).[3] As discussed, *infra.*, the MDOC defendants do not contest that plaintiff exhausted a claim against PC Simon in Grievance 1280. *See id*. at PageID.290, fn. 5.

        **a.**      **Defendants Brokaw, Dunigan, Bookie, Washington**

As an initial matter, none of these grievances sought relief against defendants ADW Brokaw, ADW Dunigan, Psychologist Bookie, or MDOC Director Washington. There is no

---

[3] The MDOC Defendants observed that plaintiff referred to these grievances in his original complaint. *See* MDOC Defendants' Brief at PageID.282-283.

7

evidence that plaintiff properly exhausted a grievance against these defendants. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, these defendants should be granted summary judgment.

    **b.**   **Grievance 694**

Grievance 694 involved an incident date of July 6, 2023. Grievance 694 (ECF No. 35-3, PageID.350). Plaintiff directed the grievance at Dr. Schafer [sic] and PC Simon. The grievance contained several claims: plaintiff listed numerous medical conditions (anxiety, depression, post-traumatic stress disorder, post-traumatic slave syndrome, psychosis, hallucinations, paranoia, claustrophobia, and suicidal ideations); plaintiff claimed violations of the First, Eighth and Fourteenth Amendments "by holding me in Segregation over 7 days without a hearing"; plaintiff claimed retaliation for filing grievances; plaintiff stated that he is unable to clean his cell, can shower only three days a week, and can use a phone once a week; plaintiff stated that he is denied "Secure Paks" (which included basic necessities "such as soap, shampoo, deodorant, shower shoes, OTC meds., etc."); plaintiff stated that he is not given general population privileges; and, plaintiff asked to be released from "Seg./SHU/"Start". *Id*.

The MDOC rejected the grievance because it violated PD 03.02.130 ¶ G which "states that you must limit your grievance to one (1) issue per grievance." PageID.351. The grievance was denied at Step II ("Grievance Coordinator Miller's Step I response is both adequate and appropriate to address the allegations or concerns presented in the grievance") and the rejection was upheld at Step III. PageID.348, 349. Grievance 694 was not properly exhausted. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, PC Simon should be granted summary judgment with respect to the claims set forth in that grievance.

   **c.**  **Grievance 1280**

  Grievance 1280 involved an incident date of October 31, 2022 (ECF No. 35-3, PageID.405). Plaintiff did not direct the grievance at anyone in particular, but did attempt to resolve the issue with the "staff member involved" (PC Simon) on November 1, 2022. *Id*. *See* PD 03.02.130 at ¶ Q ("Prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved"). The MDOC rejected the grievance as raising a non-grievable issue:

> From the start manual: Store purchases are limited to mandatory store items. In addition, prisoners cannot make purchases from the Friends and Family Package Program while in this stage. Any items received for the prisoner that were purchased through the Friends and Family Package Program by the prisoner prior to placement in this stage, or purchased by a member of the public, will be returned to the vendor and will not be redelivered. The order will not count toward the quarterly limit. Grievance is rejected at step 1 as nongrievable.

PageID.406. The grievance was denied at Step II ("Grievance Coordinator Ferguson's Step I response is both adequate and appropriate") and the rejection was upheld at Step III. PageID.402, 404.

  However, PC Simon does not raise an exhaustion defense to this Grievance stating:

> The MDOC Defendants are not challenging exhaustion under ICF-1280, but the only claim exhausted by (and raised in) ICF-1280 is PC Simon's alleged denial of Evans' SmartPak on October 31, 2022.

MDOC Defendants' Brief at PageID.290, fn. 5. *See also, id.* at PageID.291 ("the only claim Evans exhausted against the MDOC Defendants is the claim he asserted in ICF-1280 against PC Simon—i.e., that PC Simon allegedly denied him a SmartPak on October 31, 2022."). Accordingly, this case should proceed against PC Simon on that Eighth Amendment violation.

9

        **d.**        **Grievance 1285**

Grievance 1285 involved an incident date of November 6, 2022. Grievance 1285 (ECF No. 35-3, PageID.425). Plaintiff directed the grievance at defendants Unit Chief Maranka, PC Simon, RUM Luther, ADW Bonn, "Deputy Warden Unknown", Warden Davis, and Social Worker Norton. *Id*. Plaintiff listed a number of complaints: "I've been in temporary segregation for over seven business days due to lack of bed space in the Start Unit in violation of DOM 2022-12"; various constitutional violations (his Eighth Amendment right to be free from cruel and unusual punishment and deliberate indifference, his Fourteenth Amendment due process rights, and his First Amendment rights to "Redress of Grievances-Retaliation"); numerous medical conditions (increased depression, anxiety, post-traumatic stress disorder, post-traumatic slave syndrome, psychosis, claustrophobia, suicidal ideation and paranoia due to prolonged solitary confinement (since 6-30-33); "Mental health staff refused to refer me to the Residential Treatment Program"; "SCC refuse to classify me to general population or transfer me to a Regional Facility near Detroit so I can have visits from my sick mother"; "The impact of 24 hour lockdown in segregation have been detrimental on my mental health"; "I been on major Hunger-Strikes due to my mistreatment"; "This is direct retaliation against me for grievances at IBC, my litigation against Heidi Washington and my involvement with the National Appellate Clinic"; and "I request a transfer to MRF". *Id*.

The MDOC rejected the grievance because it violated PD 03.02.130 ¶ G which "states that you must limit your grievance to one (1) issue per grievance." PageID.426. The grievance was denied at Step II ("Grievance Coordinator Ferguson's Step I response is both adequate and appropriate to address the allegations or concerns presented in the grievance") and the rejection was upheld at Step III. PageID.424, 427. Grievance 1285 was not properly exhausted.

10

*See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, Unit Chief Maranka, PC Simon, RUM Luther, ADW Bonn, Warden Davis, and Psychologist/Social Worker Norton should be granted summary judgment with respect to the claims set forth in that grievance.

e.     **Summary**

Based on this record, defendants Brokaw, Dunigan, Bookie, Washington, Maranka, Luther, Bonn, Davis, and Norton should be granted summary judgment for lack of exhaustion. The only remaining MDOC defendant, Simon, should be granted summary judgment as to all claims except for the incident set forth in Grievance 1280, *i.e.*, an Eighth Amendment claim that Simon denied plaintiff a SmartPak on October 31, 2022. *See* MDOC Defendants' Brief at PageID.291. Accordingly, this case should proceed against PC Simon on that Eighth Amendment violation.

2.     **Defendants Dr. Saad and N.P. Tracy Shafer**

Defendants Dr. Saad and N.P. Shafer also seek summary judgment on the basis of exhaustion. These defendants identified Grievances 694 and 1285 as related to the incidents alleged in the amended complaint. *See* Defendants Saad and Shafer's Brief (ECF No. 36, PagerID.447). Neither Grievance 694 nor Grievance 1285 were directed against Dr. Saad. In short, there is no evidence that plaintiff filed a grievance against Dr. Saad. Similarly, N.P. Shafer is not named in Grievance 1285. However, N.P. Shafer is named in Grievance 694. For the same reasons as set forth in § III.C.1.b., plaintiff did not properly exhaust Grievance 694. Based on this record, plaintiff did not properly exhaust any grievances against Dr. Saad or N.P. Shafer. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, defendants Saad and Shafer's motion for summary judgment should be granted.

### IV.     Recommendation

For these reasons, I respectfully recommend that defendants Washington, Davids, Bonn, Brokaw, Dunigan, Luther, Smith, Norton, Bookie, and Maranka's motion for summary judgment (ECF No. 34) be **GRANTED** and that they be **DISMISSED** from this action.

I further recommend that defendant Simon's motion for summary judgment (ECF No. 34) be **GRANTED**, meaning that all claims against Simon be **DISMISSED** except for the Eight Amendment claim that Simon failed to provide a SmartPak on October 31, 2022.

I further recommend that defendants Saad and Shafer's motion to dismiss (ECF No. 36) be **DENIED**.

I further recommend that defendants Saad and Shafer's motion for summary judgment (ECF No. 36) be **GRANTED** and that they be **DISMISSED** from this action.

If the Court adopts these recommendations, then the only claim remaining in this case will be plaintiff's Eighth Amendment claim that defendant Simon failed to provide plaintiff with a SmartPak on October 31, 2022.


Dated: January 5, 2026                         /s/ Ray Kent
                                               RAY KENT
                                               United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).